1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AUTUMN ST. GEORGE,

                  Plaintiff,

      vs.

SEQUIM SCHOOL DISTRICT,

                  Defendant.

NO.

**COMPLAINT AND JURY DEMAND**

     **COMES NOW** Plaintiff, Autumn St. George, by and through her attorney of

Record, Daniel C. Gallagher and Gallagher Law Office, and claims as follows:

### INTRODUCTION

    1.1     Plaintiff Autumn St. George brings this action on behalf of herself.

    1.2     Defendant, Sequim School District, is a public school district located in Sequim,

Clallam County, Washington.

    1.3     Defendant employs Plaintiff as a physical education teacher at Sequim Middle

School.  This action arises out of Defendant's hostile work environment and retaliation

COMPLAINT AND JURY DEMAND - 1

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

following Plaintiff's complaints about the hostile environment which included and involved sex discrimination based upon Plaintiff's sexual orientation.

    1.4    Upon information and belief Defendant knew or should have known that its administrators, staff, and employees were likely to and did engage in, foster, allow and perpetuate a hostile work environment at Sequim Middle School for years.  Despite Plaintiff 's numerous verbal and written complaints about the unlawful harassment, Defendant ignored, dissembled, and ultimately retaliated against Plaintiff causing her to suffer deprivation of her civil and statutory rights, mental and emotional distress, and loss of income.

**JURISDICTION AND VENUE**

    2.1    <u>Jurisdiction</u>.  This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331 and 1367 and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

    2.2    <u>Venue</u>.  Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 and because Defendant SEQUIM SCHOOL DISTRICT is located in this jurisdiction, and the events which gave rise to this lawsuit occurred in Clallam County, Washington, within the Western District of Washington.

    2.3    <u>Governing Law</u>:  The claims of Plaintiff asserted in this complaint are brought under federal causes of action and federal law applies.

    2.4    <u>Jurisdictional Prerequisites</u>:  All conditions for jurisdiction under 42 U.S.C.A § 2000e-16 have been met.  Plaintiff timely filed a formal charge of employment discrimination with the EEOC in November 2017, and filed this action within 90 days of receipt of the Right to Sue letter.

**PARTIES**

    3.1    Plaintiff Autumn St. George resides in Clallam County, Washington and has been employed by Defendant in Clallam County since August 2012.

    3.2    Defendant Sequim School District is a political subdivision of the State of Washington located in Clallam County, Washington.

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855-9310 • FAX 206.462.1557
www.nwprolaw.com

**FACTUAL ALLEGATIONS**

4.1     Plaintiff began her employment with Defendant in August 2012 working full time teaching physical education ("PE") to students at Sequim Middle School ("SMS").

4.2     In her first year at SMS, Plaintiff was asked to coach two varsity sports.

4.3     In her second year at SMS, Plaintiff was asked to be the PE Department head and SMS Athletic Director.

4.4     During her first two years at SMS Plaintiff had no difficulties with counselors or other teachers and never needed to address any disciplinary issues involving herself or other teachers, counselors, or staff members.

4.5     During her first two years at SMS Plaintiff was always addressed by her name by the SMS administration and never as 'bro' or 'coach'.

4.6     During her first two years at SMS Plaintiff was never approached by students with questions about her sexuality or sexual orientation and Plaintiff never discussed those issues with anyone at SMS.

4.7     On or about January 23, 2015, Plaintiff attended a going away party for a colleague with other SMS employees at a local restaurant, Applebee's.  While at the restaurant, a SMS student counselor, Cathy Shea, said aloud, 'Hey Autumn, do you want me to hook you up with that waitress?'  Plaintiff felt mortified and embarrassed by the remark and did not respond.

4.8     On or about January 26, 2015, in the main office Cathy Shea stated aloud to another SMS employee, Melody Schneider, "Hey, I was trying to set up Autumn with that waitress at Applebee's."  Ms. Schneider was offended by the comment and responded that Plaintiff was not a lesbian.

4.9     On or about January 26, 2015, Melody Schneider informed Plaintiff about Ms. Shea's comment and they both went to SMS Assistant Principal Scott Harker and complained to him about Ms. Shea's offensive about Plaintiff's sexuality, referencing the comments made both at the restaurant and in front of office staff.  Mr. Harker instructed Plaintiff to confront

COMPLAINT AND JURY DEMAND - 3

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

Ms. Shea with her complaint and request that she cease all talk about Plaintiff's sexuality and, if the behavior continued, to bring her complaint directly to SMS Principal Vince Riccobene as he is Ms. Shea's evaluator.

4.10    On or about January 26, 2015, Plaintiff confronted Ms. Shea about the lewd statements and requested that she immediately discontinue discussing Plaintiff's sexuality at SMS or with SMS employees or students.  Ms. Shea responded by saying that she loved gay people and never meant to hurt Plaintiff.

4.11    During the next few days, Plaintiff  stopped by Ms. Shea's office to discuss a student concern.  Rather than discuss the student concern, Ms. Shea once again began discussing Plaintiff's sexuality, informing her that a friend had seen Plaintiff on a dating website and that Ms. Shea had assumed that she was gay and was sorry for offending her.

4.12    During the following week Plaintiff learned that, despite Plaintiff's requests, Ms. Shea had begun gossiping about Plaintiff's sexuality with co-workers at SMS.  Plaintiff learned that four separate teachers were asked by Ms. Shea, "Does your gaydar go off with [Plaintiff]?  Do you think [Plaintiff] is gay?"

4.13    Plaintiff immediately again confronted Ms. Shea and also informed Mr. Harker who told Plaintiff that she should now take her complaint about Ms. Shea's behavior to SMS Principal Vince Riccobene as Shea's evaluator.

4.14    Plaintiff then went to Mr. Riccobene's office and complained that Ms. Shea was sexually harassing her at work by discussing Plaintiff's sexual orientation with other employees.  Following the meeting, Plaintiff believed that Mr. Riccobene would bring the issue to Karen Sande at Human Resources.

4.15    During the next few weeks several SMS students questioned Plaintiff about her sexuality.

4.16    In mid-February SMS counselor Dennis McCarthy informed Plaintiff that a parent had called the school and informed the Principal, Mr. Riccobene, that she did not want her daughter in that "lesbian's class" along with other nasty comments about Plaintiff.  The

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1  student was immediately removed from Plaintiff's class by Mr. Riccobene without involving
2  Plaintiff.

3      4.17    Plaintiff was very upset and went to Mr. Riccobene's office to inquire whether it
4  was true that a student was removed due to Plaintiff's sexuality.  Mr. Riccobene stated that he
5  was only trying to protect Plaintiff by removing the student.  Plaintiff told Mr. Riccobene that
6  his decision only served to validate the parent's accusations about Plaintiff's sexuality, which
7  was now being discussed throughout the school.

8      4.18    On or about March 9, 2015, counselor Dennis McCarthy informed Plaintiff that,
9  once again, a student was being removed from her class.  On this occasion the excuse given
10 was 'religious reasons' but Mr. McCarthy believed it was because of Plaintiff's sexuality.

11     4.19    Plaintiff again approached Mr. Riccobene and asked him what action was being
12 taken to stop Ms. Shea's gossiping about her sexuality at SMS as two students had been
13 removed from her class.  Mr. Riccobene asked Plaintiff if she wanted Karen Sande from human
14 resources to get involved.  Plaintiff said yes.

15     4.20    During April, Plaintiff met in a meeting with Ms. Shea and Assistant Principal
16 Scott Harker to discuss scheduling of classes.  Ms. Shea complained that there were numerous
17 schedule changes due to Plaintiff's desire to have students she "has relationships with" in her
18 classes.

19     4.21    On or about May 12, 2015, Karen Sande (HR) requested to meet with Plaintiff
20 regarding her position as Athletic Director ("AD") of SMS.  When Plaintiff asked Ms. Sande
21 what the meeting was about Ms. Sande was very secretive.  This was a highly unusual request
22 and Plaintiff asked Mr. Harker what the meeting was about.  Mr. Harker discovered that the
23 meeting was set up to terminate Plaintiff from the AD position.

24     4.22    In January, 2016, Plaintiff approached Mr. Riccobene in his office to inquire
25 what had come of her complaint of Ms. Shea's repeated discussing Plaintiff's sexuality with
26 other staff and students at SMS.  Mr. Riccobene stated that he had done nothing. Plaintiff again
27 demanded that he follow up on her complaints.

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1

2

3

4

5

6

4.23    During the 2016 school year, Ms. Shea retaliated against Plaintiff by bullying and intimidating her whenever she needed her assistance with school matters.  Ms. Shea was routinely and consistently rude, condescending and unprofessional towards Plaintiff following her complaints about Ms. Shea's spreading rumors about her sexuality at SMS.  When Plaintiff complained about Ms. Shea's retaliation, SMS administrators did nothing.  During this period office personnel also began to treat Plaintiff with disdain.

7

8

9

4.24    On or about January 22, 2016, Karen Sande (HR) requested a written statement from Plaintiff regarding Ms. Shea's sexual orientation discrimination and harassment of Plaintiff.

10

11

4.25    On or about January 29, 2016, Plaintiff submitted a statement of complaint to Karen Sande and SMS Superintendent Gary Neal.

12

13

14

15

16

17

18

19

20

21

4.26    On February 3, 2016, during a meeting with Plaintiff, Karen Sande (HR) informed Plaintiff that she had two options.  The first option was to have 'outside assistance' from a state investigator for her complaints about sexual orientation discrimination and harassment, but that would *bring the spotlight on Plaintiff's sexuality* and students and coworkers would need to be interviewed.  Ms. Sande said that the second option was that she herself could perform the investigation in house, which would only involve her interviewing Ms. Shea and the five coworkers she made derogatory sexual remarks to.  Ms. Sande indicated that if the allegations were proved, Ms. Shea would have a 'write up' in her personnel file and a sit down meeting with the parties to determine how to move forward professionally.  Based on these representations, Plaintiff agreed to have Ms. Sande perform the investigation in house.

22

23

24

25

26

27

4.27    In May, Plaintiff inquired about the status of the in house investigation with Ms. Sande who said that the five coworkers had confirmed Ms. Shea's derogatory sexual comments to them about Plaintiff.  Plaintiff asked whether there would be a follow up meeting with Ms. Shea and about the 'write up' in her personnel file pursuant to her assurance regarding option number two.  Ms. Sande stated that Ms. Shea did not want to sit down with her, that it happened over a year ago, that the investigation was over and Plaintiff should just move on.

COMPLAINT AND JURY DEMAND - 6

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1  Plaintiff was informed by two of the witnesses that they were never contacted by Ms. Sande
2  about the incidents.

3        4.28    Following Plaintiff's complaints about the hostile work environment and Ms.
4  Shea's sexual derogatory comments, the duties of AD expanded significantly which required
5  Plaintiff to spend her teacher planning time to complete additional AD duties.  These included:
6  meeting with ineligible athletes to discuss grade requirements while Plaintiff was teaching;
7  write up coaches evaluations for each sport; write up participation surveys for each sport; create
8  charts for the Principal and Assistant Principal displaying inventory, equipment, coaches,
9  coaching requirements; and uploading all coaches information into the WIIA system.  Plaintiff
10  submitted her resignation as AD as of May 24, 2017.  Following Plaintiff's resignation, none of
11  these AD duties are in existence.

12        4.29    Plaintiff's compensation as AD during her first two years of employment, 2012-
13  2014, was approximately $1,890 per year without a planning period allotted for the AD
14  position.  On September 17, 2014, Plaintiff was informed by her boss, the High School AD,
15  that he had meet with Superintendent Kelly Shea who said Plaintiff would receive a planning
16  period for her second year as AD, or would be paid for the time.  The High School AD also
17  indicated that Plaintiff would be retro paid for her first year as AD.  That never happened.
18  What actually occurred was that was to have been based upon her hourly rate over the 180 day
19  school year for a total wage of between $5,400-$6,300 per year, but Defendant only paid her
20  $1,500 per year to be AD in 2016 and 2017.  Plaintiff resigned the position due to Defendant's
21  retaliation which increased the workload to make it unworkable.

22        4.30    On or about September 1, 2017, Union President Diana Piersoll overheard
23  Assistant Principal Rhonda Kromm making derogatory remarks at SMS about Plaintiff and
24  another teacher, Shannon Paselk (who is gay) to employee Nikki Stevenson.  Ms. Piersoll told
25  Plaintiff that she was 'appalled' by what she heard.

26        4.31    On September 14, 2017, Ms. Shea sent a very condescending email to Plaintiff.
27  Plaintiff asked Rhonda Kromm to have Ms. Shea cease the unprofessionalism.

COMPLAINT AND JURY DEMAND - 7

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

4.32     On September 22, 2017, Plaintiff asked Ms. Kromm about when they would meet with Ms. Shea regarding her unprofessional behavior.  Ms. Kromm's response was that Shea was welcome to sit down and talk with Plaintiff whenever she.  Plaintiff stated that she was working in a hostile environment and being discriminated against daily.  Plaintiff reminded Ms. Kromm that a previous dispute between two employees resulted in Ms. Kromm ordering a mandatory meeting to resolve the conflict.  Plaintiff asked why this was not being done with Plaintiff and Ms. Shea.  Plaintiff indicated that the hostile environment was only getting worse and was affecting Plaintiff both personally and professionally.  Plaintiff pushed for a Ms. Kromm to elevate her complaint to a formal process.

4.33     On October 3, 2017, Plaintiff asked Ms. Kromm when a meeting will be held with Ms. Shea regarding unprofessional communication and the hostile work environment citing numerous instances.  Ms. Kromm states that a meeting will be set up.

4.34     On or about October 6, 2017, a mediation meeting was held with Plaintiff, Ms. Shea, Mr. Riccobene, Ms. Kromm, and Diana Piersoll in attendance.  Ms. Shea complained that she did not understand why she was at the meeting.  When Plaintiff outlined Ms. Shea's numerous derogatory sexual remarks, slights, and other unprofessional behavior, Ms. Shea began to lie about incidents incriminating Plaintiff.  When Plaintiff called Ms. Shea on her lies Ms. Shea began crying, stood up, and stormed out of the meeting - slamming the door behind her.  When Plaintiff later asked Ms. Kromm why nobody from HR was at the meeting she was told that HR would not get involved at this employee-employee level.

When Plaintiff pointed out that this behavior was an example of the type of offensive and unprofessional behavior she had been dealing with from Ms. Shea for the past two years the administrators merely expressed concern for Ms. Shea, who was not disciplined. Plaintiff asked Mr. Riccobene and Ms. Kromm whether Ms. Shea had ever previously complained about her and they both responded 'NO'.  Ms. Text messaged Plaintiff that evening and told Plaintiff how well she had articulated herself at the meeting, which directly contradicts Ms. Shea's later complaint about Plaintiff's conduct at the meeting.

COMPLAINT AND JURY DEMAND - 8

1    4.35    On or about October 23, 2017, Ms Kromm informed Plaintiff that an outside

2    mediator would get involved.

3    4.36    On or about November 1, 2017, Ms. Kromm entered Plaintiff's office work area

4    during class, asked the students to leave, and informed Plaintiff that the mediator was at the

5    school to meet her at 1:00.  Plaintiff had not previously been informed of the meeting.  Plaintiff

6    was informed that she did not have to attend and that she could have union representation.

7    Plaintiff asked why she might need union representation.  Plaintiff was informed that Ms. Shea

8    had filed a formal complaint against her for harassment and workplace hostility and this was

9    the reason for the meeting.  Plaintiff indicated that Shea's coincidentally mirrored her own

10   complaints of the past two years, yet she had not received similar consideration.

11   4.37    Plaintiff met with the individual who told Plaintiff that he was an investigative

12   lawyer hired by the Sequim School District to investigate Ms. Shea's complaint and that 'lying

13   will be considered insubordination.'  Also present were Union President Diana Piersoll and Ms.

14   Kromm.  Plaintiff had never seen Ms. Shea's complaint.  Plaintiff was confused and appalled

15   by what was happening.  The investigative lawyer, Rick Kaiser, asked Plaintiff questions about

16   being out of the closet.  Ms. Kromm attended the meeting and twice interrupted Plaintiff to

17   speak in defense of Ms. Shea.

18   4.38    On or about November 2, 2017, Plaintiff received a phone call from Union

19   President Diana Piersoll.   Ms. Piersoll told Plaintiff that she felt "emotionally hijacked and

20   couldn't find the words to speak" in the meeting and was sending her personal apologies.

21   4.39    On or about November 8, 2017, Ms. Piersoll told Plaintiff that Ms. Kromm

22   knew that the November 1, 2017, meeting with Rick Kaiser was not going to be a mediation

23   meeting, but rather an investigation with the interrogation of Plaintiff as its purpose.

24   Defendant's HR employee, Paul Wieneke, apologized to Plaintiff for the 'Athletic Director

25   fiasco' and stated that Plaintiff 'did not deserve what happened.'  When Plaintiff informed Mr.

26   Wieneke that it was interesting that the AD position was vastly different since Plaintiff

27   resigned, Mr. Wineke apologized profusely.

COMPLAINT AND JURY DEMAND - 9

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1    Plaintiff reviewed her personnel file and noticed that a document replete with highly

2  offensive and false information critical of Plaintiff was in the file.  The document had been

3  authored by Ms. Kromm in 2016.  Ms. Kromm in 2016 had informed Plaintiff that the

4  document was a mistake and would be removed.  Ms. Kromm had in 2016 shredded the

5  document in front of Plaintiff as proof that it was removed from Plaintiff's personnel file.

6  However, the document had a sticky note on the first page stating that it was to be placed in

7  Plaintiff's file and was initialed 'RK'.  The document was inflammatory and salacious and

8  implied that Plaintiff might be engaged in pedophilic behavior at SMS.  Plaintiff then asked

9  Mr. Wieneke for a copy of Ms. Shea's complaint against her but was told she would require a

10  formal Public Records Request.  Plaintiff asked how she could respond to the complaint if she

11  could not see the allegations contained therein.

12    4.40    On or about November 9, 2017, at 6:10 a.m. Plaintiff received a text message

13  from Ms. Kromm in which she stated that Plaintiff 'does not appear happy these days' and that

14  she was 'concerned and hoped things would be better soon.'  At 6:19 a.m. Plaintiff received a

15  text message from Ms. Kromm stating that Plaintiff 'is not her perky self' and that she 'is

16  thinking of her.'  At 7:29 a.m. Plaintiff received another text message from Ms. Kromm asking

17  'when [Plaintiff] 'will be at work?'  At 7:34 a.m. Plaintiff received another text message from

18  Ms. Kromm again asking when Plaintiff would be at work.

19    At 7:37 a.m. Ms. Kromm entered Plaintiff's office and stated repeatedly that she had

20  not given the offensive paperwork Plaintiff found in her personnel file the previous day to HR,

21  and that the document should have been shredded and should not have been present in any

22  personnel files.  Ms. Kromm stated that the document should have been destroyed in 2016 and

23  pleaded with Plaintiff to believe her.

24    Plaintiff asked Ms. Kromm not to discuss the matter further and asked her to please

25  leave her office at least 20 times.  Ms. Kromm refused to leave, was highly agitated, and raised

26  her voice becoming louder as she insisted Plaintiff listen to her and believe her.  Ms. Kromm's

27  behavior escalated until she raised her arm and threw her keys violently down on the floor of

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

Plaintiff's office and said 'Goddamn it Autumn, look at me!  Look at my face! Look at me!'
Plaintiff responded, 'I don't want to talk.  What don't you understand about that?'  Plaintiff told
Ms. Kromm that she was fed up with all the lies and reminded her of the meeting where
Plaintiff's sexuality was discussed at length.  Plaintiff attempted to leave her office to escape
Ms. Kromm but Ms. Kromm blocked the door but Plaintiff finally got around Ms. Kromm.

At 7:45 a.m. Plaintiff informed her union through Ms. Piersoll that she felt threatened
and cornered by Ms. Kromm when she pleaded with her to leave her office.  Plaintiff was
emotionally shaken and wept as she related the event to Ms. Piersoll.   Ms. Piersoll asked
Plaintiff if she would like to take an administrative day off.  Plaintiff said yes but indicated that
she was also concerned because she had so much going on at work.

Ms. Piersoll asked Plaintiff if she would be OK with her going to Ms. Kromm and Mr.
Riccobene to request that they cease all communication with Plaintiff.  Plaintiff then informed
Ms. Piersoll that she was absolutely losing her mind over all of this and felt so overwhelmed
and was not sure she could handle it anymore.  Plaintiff told Ms. Piersoll that she wondered
whether she was being set-up to react unprofessionally and intentionally being pushed to her
breaking point.  Plaintiff informed Ms. Piersoll that Ms. Kromm was aware that Plaintiff was
attempting to become pregnant during the past few months which she had put off for the past
two years due to the stress caused by the hostile work environment.

Soon after Ms. Piersoll informed Plaintiff of her discussion with Mr. Riccobene about
the incident between Ms. Kromm and Plaintiff and that Plaintiff would be taking a day off due
to the stress and emotional upset caused by Ms. Kromm's histrionics in her office.  Ms. Piersoll
indicated that Mr. Riccobene responded very negatively to the information and stated, 'what
the fuck is going on? [Plaintiff] is being dramatic about this situation!'  Ms. Piersoll said that
she was 'taken aback' by Mr. Riccobene's reaction.

At 8:44 a.m. Plaintiff's union representative, Christi McCorkle, called Plaintiff and
asked whether she had a personal physician and if so to contact them because these egregious
acts are affecting Plaintiff personally.  Ms. McCorkle also indicated that Plaintiff should be

COMPLAINT AND JURY DEMAND - 11

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1   placed on leave until the investigation was completed.  When Plaintiff went to the office to

2   submit her lesson plans for the day for the substitute teacher, Mr. Riccobene commented to

3   Plaintiff, 'hey coach, hope you have a great day!' as Plaintiff departed.

4           At 10:14 a.m. Ms. McCorkle sent an email to Defendant Superintendent Gary Neal,

5   SMS Executive Director of HR Randy Hill, and Union Rep. Jon Eekhoff, informing them that

6   Plaintiff would be filing an EEO complaint against SMS Administration and colleagues that

7   have interfered with her ability to work in a safe environment.  Based upon her knowledge of

8   the events, Ms. McCorkle encouraged Plaintiff to file a charge with the EEOC and a civil

9   lawsuit against Defendant.

10          4.41    On or about November 21, 2017, a meeting was held with Plaintiff, Ms.

11  McCorkle, and Randy Hill (Executive Director of Human Resources at SMS).  Mr. Hill feigned

12  ignorance of any of the past events at the meeting and stated that he could not recover the

13  original investigation of Ms. Shea from Plaintiff's numerous complaints.  Mr. Hill also

14  indicated that he was unaware of the investigative lawyer's interrogation of Plaintiff's

15  sexuality.  Plaintiff related the major events from January 1, 2015 to the present to Mr. Hill

16  illustrating why Plaintiff felt subjected to discrimination and harassment at SMS.  Ms.

17  McCorkle stated to Mr. Hill that Plaintiff would be filing an EEOC Charge since so many

18  egregious acts against Plaintiff had been going on since January 2015 with absolutely no

19  actions taken by Defendant to protect Plaintiff from the discrimination and harassment.

20          4.42    On or about November 30, 2017, Plaintiff and Ms. McCorkle met with Mr. Hill

21  to discuss his findings related to the Shea complaint and Mr. Hill handed Plaintiff a letter in

22  which he stated his findings that the Shea complaint did not meet his level of harassment.

23          4.43    Defendant's requirements for Plaintiff were and are more restrictive than her

24  male counterparts.  Defendant requires that Plaintiff be monitored during work hours, but not

25  her male counterpart PE teachers.

26          4.44    Defendant has used meetings with students and parents regarding complaints

27  about other SMS employees to interrogate female students and their parents about Plaintiff's

COMPLAINT AND JURY DEMAND - 12

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

relationship with the students implying that Plaintiff's relationships with students are improper and suggesting to at least one parent that the message from Defendant is that Plaintiff is not to be trusted with female students.

    4.45   Plaintiff's sexual orientation and her complaints about discriminatory treatment and a hostile work environment resulted in Defendant's ongoing retaliation against Plaintiff.

    4.46   Plaintiff has been injured and suffered damages as a result of Defendant's acts.

## V. FIRST CLAIM FOR RELIEF

### Sex Discrimination – Title VII

    5.1   Plaintiff realleges the preceding paragraphs as though fully set forth herein.5.2 Defendant Sequim School District's hostile work environment on the basis of Plaintiff's sexual orientation constitutes sex discrimination in violation of Title VII, 42 U.S.C. section 2000e.

    5.3   As a result of Defendant's unlawful acts, Plaintiff has been deprived of her rights and privileges under the law and has suffered and continues to suffer damages in an amount to be determined at trial.

## VI.  SECOND CLAIM FOR RELIEF

### Retaliation – Title VII

    6.1   Plaintiff realleges the preceding paragraphs as though fully set forth herein.

    6.2   Defendant Sequim School District's actions constitute retaliation against Plaintiff for having engaged in protected actions opposing a hostile work environment on the basis of her sexual orientation in violation of Title VII, 42 U.S.C. section 2000e.

## VIII.  JURY DEMAND

    8.1   Plaintiff demands that this matter be tried before a jury.

////

////

////

////

GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855.9310 • FAX 206.462.1557
www.nwprolaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IX.  PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff prays for relief as follows:

A.      For judgment against Defendant and an award of damages for mental anguish and emotional distress in an amount to be proven at trial for violation of Title VII;

C.      Attorneys' fees and costs pursuant to applicable U.S. law under Title VII.

D.      For such other and further relief as the court deems just and equitable.

DATED this 9th day of May, 2018.

GALLAGHER LAW OFFICE PS


By:   /s/ Daniel C. Gallagher, WSBA #21940
      Daniel C. Gallagher, WSBA #21940
      Email:  dan@nwprolaw.com
      10611 Battle Point Drive NE
      Bainbridge Island, Washington  98110-1493
      Telephone:  (206) 855-9310
      Facsimile:  (206) 462-1557


*Attorneys for Plaintiff*

COMPLAINT AND JURY DEMAND - 14

**GALLAGHER LAW OFFICE PS**
10611 Battle Point Drive NE
Bainbridge Island, Washington  98110-1493
TEL. 206.855-9310 • FAX 206.462.1557
www.nwprolaw.com